**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LEWIS VACCARO,

    Plaintiff,

vs.                                         Case No. 3:08-cv-776-J-32JRK

CUSTOM SOUNDS, INC., a Florida
corporation, MELVILLE O. LETTSOME,
and ELVIS LETTSOME,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**[1]

This cause is before the Court regarding an evidentiary hearing held by the undersigned on December 11, 2009 (see Doc. No. 21 (Minute Entry)) in connection with Plaintiff's Motion for Default Final Judgment (Doc. No. 16; "Motion"), filed May 26, 2009. By Order dated November 19, 2009, the Honorable Timothy J. Corrigan, United States District Judge, reserved ruling on the Motion and directed that a hearing be held to determine the proper amount of damages, and to address the claims for attorney's fees and costs. See Order (Doc. No. 19) at 4-5. Having held the hearing and being otherwise fully advised in the premises, the undersigned enters this Report and Recommendation.

## **I. Background**

This action was commenced on August 5, 2008, when Plaintiff filed the Complaint suing his former employers, Defendant Custom Sounds, Inc. ("Custom Sounds"), and

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14) days after service of this document. Failure to file timely objections may bar the party from a de novo determination by a district judge and from attacking factual allegations on appeal. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Defendant Melville O. Lettsome ("Melville Lettsome"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). See Compl. On March 13, 2009, Plaintiff filed an Amended Complaint (Doc. No. 11), adding Defendant Elvis Lettsome ("Elvis Lettsome"). See Am. Compl. The three-count Amended Complaint alleges Plaintiff was hired by Defendants in March 2008 as a car stereo installer, and Defendants terminated his employment in April 2008. Id. at 3. Plaintiff claims he was not paid overtime compensation as required by the FLSA (Count I), alleges retaliation in violation of the FLSA (Count II), and claims he was not paid minimum wages as required by the FLSA (Count III). Am. Compl. at 4-8. Plaintiff seeks overtime compensation, back pay and front pay, unpaid minimum wages, liquidated damages, compensatory damages, reinstatement, injunctive relief, reasonable attorney's fees, costs, and expenses, and post-judgment interest. Id.

The Clerk entered defaults against all three Defendants, none of whom filed an appearance in this matter. See Doc. Nos. 10, 15. Thereafter, Plaintiff filed the Motion, seeking the entry of a final default judgment against Defendants in the amount of $51,331.20. Motion at 3. In the November 19, 2009 Order, Judge Corrigan found that Defendants have admitted the "well-pleaded factual allegations made in Plaintiff's Amended Complaint" as a result of Clerk's defaults having been entered against them, and "that Defendants are jointly and severally liable to Plaintiff for his unpaid overtime wages, for retaliatory discharge, and for liquidated damages." Order (Doc. No. 19) at 2-3 (internal citations omitted). Judge Corrigan referred the matter to the undersigned for an evidentiary hearing regarding the proper amount of damages and "any claims for attorney's fees and costs." Id. at 4.

## II. Evidentiary Hearing

On November 30, 2009, an Order was entered setting an evidentiary hearing for December 11, 2009.[2] See Order (Doc. No. 20). On December 11, 2009, the hearing was held, at which Plaintiff testified. See Minute Entry (Doc. No. 21). Plaintiff also offered the following exhibits: (1) self-prepared "Biweekly Time Sheet[s]" (Exh. No. 1; "Time Sheets"); (2) an overtime damages calculation chart (Exh. No. 2; "Overtime Chart"); (3) a "Declaration of Peter Bober in Support of Award of Attorney's Fees and Costs" (Exh. No. 3; "Declaration"); and (4) a calculation of the total damages sought (Exh. No. 4; "Total Damages Calculation"). Following the hearing, on December 22, 2009, an Amended Declaration of Peter Bober in Support of Award of Attorney's Fees and Costs (Doc. No. 22; "Amended Declaration") was filed.

Plaintiff testified as follows. Plaintiff was employed by Defendants for approximately five weeks, from March 3, 2008 to April 5, 2008. Plaintiff was compensated in the amount of $500.00 per week. The $500.00 represented payment for forty-two hours of work. Plaintiff and Melville Lettsome agreed on these terms on Plaintiff's first day of employment.

Instead of working forty-two hours per week, Plaintiff generally worked between fifty and sixty hours. During his employment, Plaintiff personally kept the Time Sheets. Plaintiff's hours worked per week, as reflected by his Time Sheets and his testimony, are as follows:

| Week One (3/3/2008-3/9/2008) | 54.25 hours |
|---|---|

---

[2] The Order directed that copies be sent to "*Pro se* Parties"; however, as with every Order entered in this matter, the docket does not indicate that copies were sent to Defendants. The undersigned surmises this is because Defendants have not made an appearance in this matter. In an abundance of caution, it is directed that a copy of this Report and Recommendation be sent to each address listed in the Returns of Service (Doc. Nos. 7, 8, 13) and the Service List attached to the Motion.

| Week Two (3/10/2008-3/16/2008) | 49 hours |
| --- | --- |
| Week Three (3/17/2008-3/23/2008) | 66.25 hours |
| Week Four (3/24/2008-3/30/2008) | 54.5 hours |
| Week Five (4/1/2008-4/7/2008) | 32 hours |

See Time Sheets; Overtime Chart.[3] On the last day of his employment, April 5, 2008, Plaintiff called Melville Lettsome regarding unpaid overtime on his previous two paychecks; Mr. Lettsome told Plaintiff that he was not entitled to overtime and told Plaintiff he was fired. Plaintiff did not receive a paycheck for the last week of work. Plaintiff seeks overtime compensation in the amount of $1,047.20 (see Overtime Chart), plus an equal amount in liquidated damages (see Total Damages Calculation).

The same day Plaintiff was fired, he "immediately" started looking for another job, submitting at least four or five applications to various employers, and submitting "countless" total applications during the next twenty-six weeks. According to Plaintiff, he looked for work every day for twenty-six weeks, until October 2008 when he found another job. For the twenty-six weeks of unemployment, Plaintiff seeks lost wages in the amount of $13,000.00 (26 weeks x $500.00 per week), plus an equal amount in liquidated damages (see Total Damages Calculation).

While unemployed, Plaintiff was engaged to be married and had to rely on his soon-to-be mother and father-in-law[4] for assistance with supporting his family (including his fiancé and two-year-old daughter). During this time, Plaintiff was "embarrassed and scared" to have

---

[3] Plaintiff testified these numbers are different than those provided in his sworn declaration attached to the Motion (Doc. No. 16-2) because he had recently found the Time Sheets.

[4] It is unclear from Plaintiff's testimony whether he relied on his mother or his mother-in-law for assistance. Accordingly, hereinafter, any references to testimony regarding Plaintiff's "mother and father-in-law" are instead called "parents."

to rely on his parents. For this "emotional distress, humiliation, and embarrassment," Plaintiff seeks damages in the amount of $10,000.00.

Had Plaintiff received his last paycheck and been paid for the thirty-two hours he worked, at the minimum wage rate of $5.15 per hour, Plaintiff would have received $164.80. Accordingly, Plaintiff seeks $164.80, plus an equal amount in liquidated damages.

In sum, Plaintiff now seeks $38,424.00. See Total Damages Calculation. In addition to the damages claims, Plaintiff asks for $2,970.00 in attorney's fees and $486.00 in costs ($350.00 filing fee and $136.00 for service of process). See Amended Declaration.

## III. Discussion

### A. Minimum Wages

Plaintiff seeks an award of minimum wages in the amount of approximately $164.80, plus an equal amount in liquidated damages, for the thirty-two hours of work he performed during his last week of employment. See Total Damages Calculation. Plaintiff's attempt to receive his last paycheck was unsuccessful so Plaintiff was never compensated for this time. With respect to unpaid minimum wages, "[a]ny employer who violates the provisions of section 206 [(minimum wage)] . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages. . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). At the time Plaintiff worked for Defendants, the federal minimum wage rate was $5.85 per hour. See 29 U.S.C. § 206(a)(1)(A). Accordingly, the amount of minimum wages Plaintiff seeks is reasonable and should be awarded.[5] In

---

[5] Apparently, Plaintiff erroneously calculated his lost minimum wages using the figure of $5.15 per hour, which was the federal minimum wage prior to the 60th day after May 25, 2007.

addition to the $164.80 in minimum wages, Plaintiff should receive $164.80 in liquidated damages. See 29 U.S.C. § 216(b).

### B. Overtime Compensation

Plaintiff seeks $1,047.20 in unpaid overtime compensation, plus an equal amount in liquidated damages. See Overtime Chart, Total Damages Calculation. According to the FLSA, employers must pay overtime compensation at the rate of one and one half times the regular rate when employees work more than forty hours per week. See 29 U.S.C. § 207(a)(1). With respect to overtime compensation, "[a]ny employer who violates the provisions of . . . section 207 [(maximum hours)] of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation. . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A plaintiff has the burden of proving his entitlement to unpaid overtime compensation by "produc[ing] sufficient evidence to show the amount and extent of [work performed] as a matter of just and reasonable inference." McLaughlin v. Stineco, Inc., 697 F. Supp. 436, 450 (M.D. Fla. 1988) (quoting Anderson v. Mt. Clemons Pottery Co., 328 U.S. 680, 687 (1946)). Upon review of the Time Sheets, the Overtime Chart, and Plaintiff's testimony, the undersigned concludes Plaintiff has proven his entitlement to overtime compensation in the amount he seeks ($1,047.20), plus an equal amount in liquidated damages ($1,047.20).

### C. Lost Wages as a Result of Retaliation

As a result of the retaliatory termination, Plaintiff seeks wages he would have earned had he been employed by Defendants during the twenty-six weeks he was unemployed. See Total Damages Calculation. "[A]n employer may not discharge or in any other manner discriminate against an employee because that employee has filed a complaint against the

employer regarding violations under the FLSA. . . ." Bogacki v. Buccaneers Ltd. P'ship, 370 F. Supp. 2d 1201, 1202 (M.D. Fla. 2005) (citing 29 U.S.C. §§ 206-207, 215). If an employer violates the anti-retaliation provision of the FLSA, the employer "'shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [the anti-retaliation provision], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. . .'" Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 931 (11th Cir. 2000) (quoting 29 U.S.C. § 216(b)). If the amount of damages sought are not specified in a complaint and a defendant defaults, a plaintiff must prove the damages he seeks. See Miller v. Paradise of Port Richey, Inc., 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).

The Court has previously accepted Plaintiff's allegation that "[he] was terminated in retaliation for objecting to not receiving overtime[.]" Order (Doc. No. 19) at 2; cf. E.E.O.C. v. White and Son Ents., 881 F.2d 1006, 1011 (11th Cir. 1989) (concluding that "unofficial complaints expressed by [employees] to their employer about unequal pay constitute[d] an assertion of rights protected under the [FLSA]"); Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 181 (8th Cir. 1975) (stating, "Where the immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge exist") (internal citations omitted). For such retaliation, Plaintiff seeks damages in the form of lost wages during the time he was unemployed, and liquidated damages equal to the sum of lost wages. Plaintiff alleges he was out of work for twenty-six weeks. At the rate of $500.00 per week, Plaintiff seeks $13,000.00 in lost wages plus $13,000.00 in liquidated damages.

Upon review of Plaintiff's testimony in this regard, the undersigned finds that the damages sought as a result of Plaintiff's unemployment for one-half of a year are excessive. During the December 11, 2009 hearing, Plaintiff offered testimony in an attempt to justify why it took him one-half of a year to obtain subsequent employment. Plaintiff testified that as soon as he was fired, he began seeking other employment. Plaintiff further testified that he turned in "countless" applications over the period of twenty-six weeks, looking for work every day during that period. According to Plaintiff, he returned applications to Best Buy, Circuit City, Sound Advice, and every other local stereo shop. Plaintiff applied to stereo shops because he is trained in installing stereos.

Having observed Plaintiff's demeanor and having listened carefully to his testimony, the undersigned finds less than credible Plaintiff's statements that he looked for work every day for twenty-six weeks and submitted "countless" applications in total. Plaintiff stated he submitted "countless" applications; yet, he could name only three businesses at which he applied. Plaintiff did not submit any documentation of his efforts to look for work. Furthermore, Plaintiff admitted applying only to stereo shops, although Plaintiff's job skills appear to be transferrable to many other jobs.

Courts have "broad equitable powers" which can include "awarding lost wages" for violations of the FLSA. Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 880 (2d Cir. 1988) (holding that the district court did not exceed the "broad equitable powers by awarding lost wages until the time of judgment" when the district court had properly considered mitigation efforts and deducted interim earnings to arrive at damages figures). Because the undersigned finds it less than credible that Plaintiff diligently but unsuccessfully sought employment every day for twenty-six weeks, it would be excessive to award lost wages for

this entire period. Therefore, it is recommended that Plaintiff be awarded twelve weeks of lost wages as a result of the retaliation, which is a reasonable period of time to seek and obtain employment given the circumstances presented. Cf. Hayes v. McIntosh, 604 F. Supp. 10, 21 (N.D. Ind. 1984) (observing that the employee could have "been more diligent" in seeking employment after being discharged in violation of the retaliatory provision of the FLSA and "opt[ing] for a middle ground" with respect to damages, noting that "[l]imiting damages in this way, though somewhat arbitrary, is not without precedent") (internal citations omitted). Additionally, Plaintiff should receive an equal amount of liquidated damages based upon the retaliatory termination. See Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1573 (11th Cir. 1988); Miller, 75 F. Supp. 2d at 1345 (stating "in retaliation claims under 29 U.S.C. § 215(a)(3), an award of liquidated damages is mandatory unless the Court explicitly finds that the defendant acted in good faith. . ."). Accordingly, Plaintiff should receive $6,000.00 in lost wages as a result of the retaliation (12 weeks x $500.00) plus $6,000.00 in liquidated damages.

### D. Compensatory Damages for Emotional Distress

In addition to lost wages as a result of retaliation, Plaintiff seeks compensatory damages in the amount of $10,000.00 for emotional distress associated with the retaliation. See Total Damages Calculation. The damages provision for retaliation claims does not speak directly to compensatory damages for emotional distress, but states that the employer "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [the anti-retaliation provision]. . ." 29 U.S.C. § 216(b).

At least two judges in the Middle District of Florida have come to apparently opposite conclusions regarding whether compensatory damages for emotional distress are available

pursuant to section 216(b). The Court in Bolick v. Brevard County Sheriff's Dept. held that "[p]unitive and emotional damages are not available under the FLSA" and granted partial summary judgment to a defendant on the issues of punitive and emotional damages. 937 F. Supp. 1560, 1566-67 (M.D. Fla. 1996). Since then, in Bogacki, the Court was faced with the issue of whether the retaliation provision of the FLSA provides for compensatory damages as a result of emotional distress. 370 F. Supp. 2d at 1201-02. The Bogacki Court referenced the Sixth Circuit's recognition in Moore v. Freeman, 355 F.3d 558, 564 (6th Cir. 2004) that the Seventh Circuit, the Eighth Circuit, and the Ninth Circuit "directly or indirectly have allowed emotional distress awards under the FLSA to stand." Bogacki, 370 F. Supp. 2d at 1203 (internal citations omitted). Ultimately, the Bogacki Court determined that "each [retaliation] case should stand or fall on its own merit" and denied without prejudice a defendant's motion for summary judgment on mental anguish damages because "neither party ha[d] addressed the strength, weakness, or absence of any evidence of the Plaintiff's alleged emotional distress. . ." Id. at 1205-06.[6]

---

[6] More recently, in Olivas v. A Little Havana Check Cash, Inc., 324 Fed. App'x 839 (11th Cir. 2009) (unpublished), the Eleventh Circuit was presented with a somewhat related issue but did not decide the issue presented here. The relevant facts of Olivas are as follows. Following a trial on overtime damages pursuant to the FLSA, liability and damages for a retaliation claim under the FLSA, and punitive damages on a conversion claim, a jury awarded the plaintiff $29,799.00 in unpaid overtime wages and $150,000.00 in emotional distress damages on the FLSA claims. Olivas, 324 Fed. App'x at 841. The district court concluded that the unpaid overtime award was too high, recalculated it to be $20,097.00, concluded that the emotional distress award "shocked the conscience in light of its instructions limiting the award of those damages," remitted the emotional distress award to $25,000, and "gave [the plaintiff] the option of a new trial, which she did not elect." Id. at 843. On appeal, the defendant "challenge[d] the district court's refusal to grant a new trial." Id. The Eleventh Circuit recognized that the defendant had previously argued to the district court "that the excessiveness of the damages required a new trial," but at the appellate level, argued "that a new trial was mandatory because the jury missed the mark on damages and liability." Id. (internal quotation and alteration omitted). Because the defendant had not raised the liability challenge in arguing to the district court, the Eleventh Circuit declined to address it. Id. Addressing only the district court's handling of the unpaid overtime award, the Eleventh Circuit found that the district court did not abuse its discretion in refusing to grant a new trial. Id.

Here, the Court has previously found that Defendants admitted, by defaulting, that "Plaintiff suffered emotional distress as a result of his termination." Order (Doc. No. 19) at 2. Notwithstanding this factual finding, the Court recognized that "allegations relating to the amount and character of damages are *not* admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Id. at 3 (internal citation omitted). In assessing the issue of damages available for a retaliation claim, it is not entirely clear whether the Eleventh Circuit would approve awarding compensatory damages for emotional distress; however, the Court's analysis in Bogacki,[7] combined with other circuits' approval of such damages and the Eleventh Circuit's handling of the issues presented in Olivas, leads the undersigned to believe that the Eleventh Circuit would conclude that compensatory damages for emotional distress can be awarded in FLSA cases.

Plaintiff testified his employer fired him as a result of his inquiry regarding unpaid overtime. When Plaintiff attempted to pick up his last paycheck, Plaintiff was told to "take it out of [his employer's] a\*\*." No other egregious actions were undertaken or words spoken by the employer.

During his unemployment, Plaintiff was engaged to be married, had a two-year-old daughter, and had to rely on his parents to support his family. Plaintiff stayed with his soon-to-be father-in-law. Plaintiff's "mother" helped him pay for necessaries, his cellular phone bill, and insurance. According to Plaintiff, these stressful events caused him to be upset and embarrassed. The events "took a toll" on his relationship with his fiancé. The undersigned credits Plaintiff's testimony in this regard. However, considering Plaintiff's testimony in the

---

[7] In Bogacki, the Court conducted a detailed analysis of Eleventh Circuit precedent on related issues, as well as other circuits' precedent on the issue of compensatory damages for emotional distress in FLSA cases. See Bogacki, 370 F. Supp. 2d at 1201-06.

framework of other cases in which courts have considered appropriate amount of damages for emotional distress claims, the undersigned finds as a factual matter that based upon the harm suffered by Plaintiff, $5,000.00 is a fair and reasonable amount. See Perez v. Jasper Trading, Inc., No. 05 CV 1725(ILG)(VVP), 2007 WL 4441062, at *8 (E.D.N.Y. Dec. 17, 2007) (unpublished) (recognizing emotional distress awards involving facts similar to those in that case "usually range from $5,000 to $30,000") (internal citations omitted).[8] Although it is undeniable that Plaintiff suffered some form of emotional distress (and indeed the Court has already so found), the facts of this relatively unremarkable FLSA case do not warrant an award of $10,000.00 for such distress.[9] Accordingly, the undersigned recommends awarding $5,000.00 in compensatory damages for emotional distress.

### E.    Attorney's Fees and Costs

Plaintiff seeks attorney's fees in the amount of $2,970.00, plus costs in the amount of $486.00 ($350.00 for the filing fee and $136.00 for service of process). See Amended Declaration. Upon review of the Amended Declaration, as well as the billing records attached thereto, the undersigned concludes that the fees sought are reasonable and should be

---

[8]     For a discussion of the facts in Perez, see footnote 9, infra.

[9]     Indeed, a review of cases in which courts have awarded emotional distress damages typically have more egregious facts than those presented here. See, e.g., Olivas, 324 Fed. App'x at 840-41 (employee took from employer's store $35,000.00; employer filed a police report claiming money was stolen; employee filed suit under the FLSA for overtime wages; employer counterclaimed alleging conversion of funds; employee was charged with grand theft; employer told criminal defense counsel he would recommend to the state attorney's office dropping the grand theft case if employee dismissed overtime claim; employee then commenced retaliation claim against employer); Perez, 2007 WL 4441062, at *8 (employees were garment workers and natives of Bangladesh; when they demanded payment of unpaid compensation, employer told them he would contact immigration officials, warned them he knew where they lived and that they were not properly documented, and threatened to send authorities to any subsequent employer; employer also spread rumors that employee was having sexual relations with a co-worker; employees' anxiety and fear developed into documented medical problems); Moore, 355 F.3d at 561 (after being fired, employee worried about family's bills, lost health insurance, had to take his children out of a soccer league for fear they would get injured with no insurance, had trouble sleeping at night, became short-tempered, lost his appetite, and had neck pains).

awarded. In addition, Plaintiff is entitled to the costs he seeks. See Perrin v. John B. Webb & Assocs., No. 604CV399ORLKRS, 2005 WL 2465022, at *5 (M.D. Fla. Oct. 6, 2005) (unpublished) (recognizing "[c]osts for service of process and the filing fee are . . . properly awarded under 28 U.S.C. § 1920" and awarding same in an FLSA case).

### IV. Conclusion

For the reasons stated herein, it is

**RECOMMENDED:**

1. That Plaintiff's damages be calculated as follows: (1) $164.80 in minimum wages plus $164.80 in liquidated damages; (2) $1,047.20 in unpaid overtime compensation plus $1,047.20 in liquidated damages; (3) $6,000.00 in lost wages plus $6,000.00 in liquidated damages, and (4) $5,000.00 in compensatory damages for emotional distress, for a **total of $19,424.00.**

2. That the amount of attorney's fees be calculated as $2,970.00 and the costs be calculated as $486.00.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on March 4, 2010.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

kaw

Copies to:

Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record

Custom Sounds, Inc.
Spiegel & Utrera, P.A.
Registered Agent
1840 SW 22 Street, 4th Floor
Miami, Florida 33145

Melville O. Lettsome
8737 Darlington Drive
Jacksonville, Florida 32208

Elvis Lettsome
15291 SW 139th Court
Miami, Florida 33177

Elvis Lettsome
1433 Carbondale Court
Jacksonville, Florida 32208

Custom Sounds, Inc.
7715 Lem Turner Road
Jacksonville, Florida 32208